UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JEFFREY SCHLOSSER, :
    Plaintiff, :
 :
v. : Case No. 3:19-cv-1444 (SRU)
 :
JOHN MANUEL, et al., :
    Defendants. :

## INITIAL REVIEW ORDER

Jeffrey Schlosser ("Schlosser"), is confined at New Haven Correctional Center. He has filed a civil rights action under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, against Commissary Officer Manuel and Correctional Counselor McNeill. He alleges that the defendants deprived him of the privilege of purchasing items from the commissary from April 4, 2019 to June 29, 2019. For the reasons set forth below, the complaint is dismissed.

**I.**     **Standard of Review**

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous, malicious, or fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that

"[p]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II. Facts

Officer Manuel was in charge of the commissary at New Haven Correctional Center in May and June 2019. Compl. at 2, 4 ¶¶ 1, 4. Schlosser spoke to Commissary Officer Manuel on multiple occasions in May 2019 because he had not been allowed to order items from the commissary. *Id.* at 4 ¶ 2. Officer Manuel informed Schlosser that there was a red line through his name and that he might be on loss of commissary privileges status. *Id.* Officer Manuel suggested that Schlosser check with the disciplinary administrator to find out if he had in fact lost commissary privileges. *Id.* At some point after May 21, 2019, Schlosser learned that he was not on loss of commissary privileges status. *Id.* ¶ 2; Exs., ECF No. 1-1, at 4. On June 4, 2019, prison officials at New Haven Correctional transferred Schlosser to Hartford Correctional Center ("HCC"). Compl. at 4 ¶ 4.

Schlosser attempted to order items from the commissary at HCC but only received items from the Loss of Commissary menu. *Id.* ¶ 5. In response to Schlosser's written request, the commissary officer at HCC informed him that he had been on loss of commissary but "she fixed it for [him]." *Id.*

Schlosser filed two grievances because he had been "lied to and deceived." *Id.* ¶ 6. On August 6, 2019, Correctional Counselor McNeill returned the first grievance without disposition because prison officials had refunded Schlosser the money that had been deducted from his

2

inmate account for the purchase of items that Schlosser did not receive. *Id.* ¶ 7; Exs., ECF No. 1-1, at 2. On August 14, 2019, Correctional Counselor McNeill returned the second grievance without disposition because the issue in the grievance had been addressed in response to the first grievance. Exs., ECF No. 1-1, at 1.

**III.    Discussion**

Schlosser claims that state officials have lied to and unnecessarily punished him and have excluded him in violation of the Americans with Disabilities Act. He seeks monetary damages and declaratory and injunctive relief.

As a preliminary matter, it is not clear whether Schlosser was a sentenced inmate or a pretrial detainee at the time of the alleged violations of his rights. The State of Connecticut Judicial Branch records reflect that a judge sentenced Schlosser in two state court cases on September 27, 2012 to ten years of imprisonment, execution suspended after thirty months and followed by ten years of probation. *See State v. Schlosser*, H12M-CR11-0236734-S (Conn. Super. Ct. Sept. 27, 2012); *State v. Schlosser*, H12M-CR12-0237931-S (Conn. Super. Ct. Sept. 27, 2012).[1] Manchester police officers subsequently arrested Schlosser on violation of probation charges. *See id.* On April 17, 2017, a judge found Schlosser guilty of violating a condition or conditions of his term of probation in both criminal cases and re-sentenced Schlosser in both cases to ninety months of imprisonment, execution suspended after one year and followed by ten years of probation. *See id.*

On October 30, 2018, probation officers arrested Schlosser for violating a condition or conditions of his term of probation in *State v. Schlosser*, H12M-CR12-0237931-S, and on

---

[1] That information may be found at: http://www.jud.ct.gov/jud2.htm under Superior Court Case Look-up; Criminal/Motor Vehicle; Convictions – by Docket Number using: H12M-CR11-0236734-S and H12M-CR12-

November 1, 2018, probation officers probation arrested Schlosser for violating a condition or conditions of his term of probation in *State v. Schlosser*, H12M-CR11-0236734-S.[2] Both violation of probation charges remain pending against Schlosser. *See id.* Thus, during the time period from April to June 2019 when Schlosser could not purchase items from the commissary, he was awaiting disposition of the probation charges pursuant to which he was arrested in October and November 2018.

Under 42 U.S.C. § 1997e(h), a "prisoner" is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The Second Circuit, however, has not resolved whether a probationer awaiting disposition of a violation of probation charge is considered to be a prisoner or a pretrial detainee. *See Hill v. County of Montgomery*, 2018 WL 2417839, at *2 (N.D.N.Y. May 29, 2018) ("Whether to classify an individual detained for a suspected probation violation as a pretrial detainee or a convicted prisoner is an 'unresolved and difficult question.'") (quoting *Harry v. Suarez*, 2012 WL 2053533, at *2 n.3 (S.D.N.Y. June 4, 2012)). In *Hill*, the district court concluded that the status of an individual confined for a probation or parole violation was "more akin to that of a pretrial detainee," at least until after the hearing and determination of guilt of the violation. *Id.* at *2. Schlosser had not been found guilty of violating the conditions of his term of probation as of the time period during which he could not purchase items from the commissaries at New Haven and Hartford Correctional Centers. Thus,

---

0237931-S N23N-CR19-0221234-S (Last visited on November 22, 2019).
[2] Information regarding Schlosser's arrests in October and November 2018 on violation of probation charges may be found on the same judicial branch website under Superior Court Case Look-up; Criminal/Motor Vehicle; Pending Case – Search by Defendant using Schlosser's last name and the first initial of his first name - Jeffrey (Last visited

4

for purposes of the analysis of Schlosser's conditions of confinement claim, I conclude that Schlosser was a pretrial detainee at the time of the alleged constitutional violation and analyze his claim under the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment.").

### A. Fourteenth Amendment

There are two prongs to the standard governing a conditions-of-confinement claim under the Fourteenth Amendment. Under the first prong, a detainee must allege that "the conditions, either alone or in combination, pose[d] an unreasonable risk of serious damage to his health . . . which includes the risk of serious damage to physical and mental soundness." *Id.* at 30 (internal quotation marks and citations omitted). The standard for establishing the objective prong of a Fourteenth Amendment claim asserted by a detainee is the same as the standard for establishing the objective prong of an Eighth Amendment asserted by a sentenced prisoner. *Id.* Thus, conditions that deprive a detainee of his or her "'basic human needs" such as "food, clothing, shelter, medical care, and reasonable safety" or subject a detainee to "an unreasonable risk of serious damage to . . . future health'" would meet the objective prong of a Fourteenth Amendment claim. *Id.* (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)).

The second prong of the Fourteenth Amendment standard, also called "the *mens rea* prong, of [the] deliberate indifference [standard] is defined objectively." *Id.* at 35. Thus, "the Due Process Clause can be violated when an official does not have subjective awareness that the official's acts (or omissions) have" created a condition that poses "a substantial risk of harm" to a detainee. *Id.* To meet the second prong of a Fourteenth Amendment conditions claim, a

on November 22, 2019).  5

detainee must allege that the prison official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [him or her] even though the [prison]-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.*

Schlosser alleges that during his confinement at New Haven Correctional Center from April 4, 2019 to June 4, 2019, Commissary Officer Manuel denied him the privilege of purchasing items from the commissary. At some point after his transfer to Hartford Correctional Center on June 4, 2019, a commissary officer informed Schlosser that he had on lost commissary privileges but that she had removed him from that status. Schlosser filed a grievance claiming that Commissary Officer Manuel had lied to him about having been placed on loss of commissary status. Schlosser asserts that Correctional Counselor McNeill failed to respond to his grievances in a timely or proper manner. Schlosser alleges that he was able to purchase items from the commissary at HCC as of June 29, 2019.

Neither a prisoner, nor a pretrial detainee has a constitutional right to purchase items from the commissary. *See, e.g., Montalvo v. Lamy*, 139 F. Supp. 3d 597, 606 (W.D.N.Y. 2015) (prisoners have no constitutional right to access a commissary) (citing cases); *Wingate v. City of New York*, 2014 WL 3747662, at *1 (E.D.N.Y. July 25, 2014) ("Prisoners, including pretrial detainees, do not . . . have a constitutional right to the use of a prison commissary[.]") (citations omitted). Furthermore, Schlosser has not alleged that the absence of any items that he might have purchased with the funds from his inmate account during the period from April 2019 through June 2019 deprived him of a basic human need or life necessity. Schlosser's inmate account statement reflects that he had at most $5.00 in his account during that period. Exs., ECF

6

No. 1-1, at 8. Because Schlosser has not alleged that either defendant deprived him of a basic human need or subjected him to a condition that posed a substantial risk of harm to his health or safety, he has not met the first prong of a Fourteenth Amendment conditions claim. The Fourteenth Amendment conditions claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**B.     First Amendment - Retaliation**

Schlosser believes that Officer Manuel placed him on loss of commissary privileges status because he filed grievances against the medical department alleging that medical providers had denied him medication and that a nurse had harassed him. He states that Counselor McNeill was aware of those grievances.

Because claims of retaliation are easily fabricated, courts consider such claims with skepticism and require that they be supported by specific facts. Thus, conclusory statements are not sufficient. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 2003). To state a claim for retaliation, a plaintiff must allege facts showing "(1) that the speech or conduct at issue was protected, (2) that the defendant took an adverse action against [him or her], and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (internal quotation marks and citation omitted).

Although the filing of a grievance constitutes protected conduct, Schlosser has not alleged that Officer Manuel was aware that he had filed a grievance against a nurse and/or the medical department regarding medical treatment. Thus, Schlosser has not alleged a causal connection between the exercise of his First Amendment right to file a grievance and the allegedly adverse conduct of Officer Manuel. Accordingly, the retaliation claim asserted against

Officer Manuel is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Although Schlosser alleges that Correctional Counselor McNeill was aware that he had filed a grievance against a nurse for harassing and denying him medical treatment, Schlosser does not allege that Correctional Counselor McNeill placed him on loss of commissary privileges status. Rather, his claim against Correctional Counselor McNeill is that she did not properly process two grievances that he filed at HCC after the commissary officer at that facility had already restored his loss of commissary privileges. At the time that McNeill responded to Schlosser's grievances, he was no longer precluded from making purchases from the commissary and his inmate account reflects that in July 2019, he made three purchases from the HCC commissary. *See* Prisoner Account Statement, ECF No. 8, at 1.

I conclude that Schlosser has not alleged that Correctional Counselor McNeill's responses to his grievances about a prior loss of commissary privileges were adverse to him or that a causal connection existed between the responses to those grievances and the grievances that he had allegedly filed against a nurse and/or the medical department about medical treatment. *See Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009) (dismissing retaliation claim against a corrections officer when only alleged basis for retaliation was a complaint made by the inmate about a prior incident involving other correctional officers); *Roseboro v Gillespie*, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011) (finding that the inmate "has failed to provide any basis to believe that [a corrections counselor] retaliated for a grievance that she was not personally named in.") (collecting cases). Because Schlosser has not plausibly alleged facts to support a First Amendment retaliation claim against Correctional Counselor McNeill, the claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### C. First and Fourteenth Amendments – Processing of Grievances

Schlosser alleges that Correctional Counselor McNeill did not forward the two grievances he filed after his transfer to Hartford Correctional Center to a supervisor for review and instead returned them to him without disposition. Schlosser contends that Correctional Counselor McNeill failed to properly process his two grievances in accordance with Administrative Directive 9.6. McNeill also neglected to provide Schlosser with receipts for the two grievances and did not return documents that were attached to the grievances.

Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance processed properly. *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (claim relating to grievance procedures "confused a state-created procedural entitlement with a constitutional right"; "neither state policies nor 'state statutes . . . create federally protected due process entitlements to specific state-mandated procedures' ") (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)); *Brown v. Graham*, 470 F. App'x 11, 13 (2d Cir. 2012) ("Brown's argument that he has a federally-protected liberty interest in the state's compliance with its own prison grievance procedures is meritless.") (citing *Holcomb*, 337 F.3d at 224); *Kalican v. Dzurenda*, 2015 WL 1806561, at *6 (D. Conn. Apr. 21, 2015) (no constitutional right to receive response to grievance). Thus, Schlosser's allegations that Correctional Counselor McNeil failed to timely forward his grievances to a supervisor for review, neglected to issue him receipts for the grievances and improperly retained documents that he had attached to the grievances in violation of the Department of Correction's administrative grievance procedures do not state a claim under the Due Process Clause of the Fourteenth Amendment. *See Garcia v. Semple, et al.*, 2019 WL 5597771, at *15 (D. Conn. Oct.

9

30, 2019) ("allegations that a prison official violated the procedures set forth in a state's administrative remedy program that is applicable to prisoner grievances do not state a claim of a violation of an inmate's constitutional rights") (collecting cases).

Nor does Schlosser allege that Correctional Counselor McNeil's failure to properly process his grievances interfered with his right to petition the government for redress of grievances or his right of access to the courts under the First Amendment. The fact that Schlosser may not have been able to completely or properly exhaust all available grievance procedures did not preclude him from seeking redress for his claims in this court. *See* 42 U.S. § 1997e(a) (requiring prisoners to exhaust administrative remedies only to the extent that the remedies are available); *Baltas v. Rivera*, 2019 WL 3944435, at *10–11 (D. Conn. Aug. 21, 2019) ("If prison officials 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation' the grievance procedure would be unavailable and the inmate would be able to proceed to federal court.") (quoting *Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1859 (2016)).

Thus, to the extent that Schlosser alleges that Correctional Counselor McNeill interfered with his attempt to utilize the administrative grievance procedures or failed to properly process his grievances, such a claim does not rise to the level of a violation under the First or Fourteenth Amendments. The First and Fourteenth Amendment claims against Correctional Counselor McNeill are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### D. Americans with Disabilities Act

Schlosser claims that he was "excluded under the ADA." Compl. at 6. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Second Circuit has held that a plaintiff must meet three elements to state a claim under the ADA: "(1) that he is a qualified individual with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusions or discrimination was due to his disability." *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003).

There are no facts to suggest that Schlosser suffers or suffered from a disability or that his alleged exclusion from purchasing items from the prison commissary for two and one-half months was due to his having a disability. Accordingly, Schlosser has not asserted a plausible ADA claim and that claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**It is hereby ordered that:**

**(1)** The Fourteenth Amendment conditions of confinement claim, the First Amendment retaliation claim, the ADA claim and the First and Fourteenth Amendment claims against Correctional Counselor McNeill regarding the processing of grievances are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). Because I have dismissed all claims in the complaint, the Motion for Appointment of Counsel, [**ECF No. 3**] is **DENIED** as moot. I conclude that it would be futile to permit Schlosser to file an amended complaint because there is no indication from the allegations in the complaint that he could assert a plausible claim for relief.

**(2)** The Clerk is directed to enter judgment for the defendants and close this case. The Clerk shall also send a copy of this order to the plaintiff, the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

So ordered.

Dated at Bridgeport, Connecticut, this 10th day of January 2020.

/s/ STEFAN R. UNDERHILL  
Stefan R. Underhill  
United States District Judge